320 S.E.2d 92

**STATE of West Virginia**

v.

**Kenneth Wayne WYER.**

**No. 15839.**

Supreme Court of Appeals of West Virginia.

March 21, 1984.

Dissenting Opinion July 9, 1984.

722

David M. Finnerin, Parkersburg, for appellee.

C. Scott Durig, Asst. Pros. Atty., Parkersburg, for appellant.

MILLER, Justice:

The defendant, Kenneth Wayne Wyer, was convicted of sexual assault in the first degree in the Circuit Court of Wood County. On appeal he claims that the trial court erred in denying his motion for instructions on lesser included offenses. He also claims that the court should have suppressed a statement taken from him by police officers after his arrest.

For the reasons hereinafter set forth, we conclude that the defendant's claim of instructional error is without merit. The suppression issue, on the other hand, raises questions of constitutional magnitude under the Sixth Amendment right to counsel. Because the record is inadequately developed on the question, we remand so that evidence regarding the circumstances surrounding the taking of the statement can be developed. The trial court should reconsider the suppression issue in light of that evidence and the principles enunciated in this opinion.

According to witnesses called by the State, the defendant, who was married, entered the home of a female neighbor, who was also married, at approximately 2:30 p.m. on April 6, 1982. He had a stocking over his head at the time and a knife in his hand. He nonetheless was recognized by the victim who had known him for about a year and who had on occasion visited his home when he and his wife were present. According to the victim, the defendant stated as he entered the house: "You know what I want." He directed her to a bedroom where he pushed her onto a bed. As a result of these actions and the display of the knife, she testified that she felt threatened and felt compelled to perform oral sex on the defendant, as he requested.

The defendant did not deny the incident but did deny that he had threatened her with a knife. He admitted that he had a knife in his pocket and stated that it fell to the floor sometime during the incident. He described the knife as an old kitchen knife having a five- or six-inch blade. The defendant also denied pushing the victim onto the bed. He testified that she voluntarily went to the bedroom and consented to the

sexual act. He admitted wearing a stocking, but said it did not cover his face, and that it was used to keep his hair out of his eyes.

After the presentation of evidence, defense counsel in discussing the court's proposed charge requested that the court instruct the jury on lesser included sexual offenses which he argued were warranted under the defendant's theory of the case. The court, after considering the question, refused and instructed the jury that they could either find the defendant guilty of sexual assault in the first degree or not guilty. The jury returned a verdict of guilty of sexual assault in the first degree.

## I.

We stated in *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982), that the determination of whether a defendant is entitled to instructions on lesser included offenses involves a two-part inquiry.[1] The first question centers on a legal issue of whether the charge against a defendant contains lesser included offenses. This is resolved by applying the principle contained in Syllabus Point 1 of *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1982):

> "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it re-

quires the inclusion of an element not required in the greater offense."

*See also State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545 (1981); *State v. Bailey,* 159 W.Va. 167, 220 S.E.2d 432 (1975).

The other inquiry is factual and requires a determination of whether there is evidence in the particular case which tends to contradict the evidence of the elements of the greater offense which are different from the elements of the lesser included offense. We summarized this principle in Syllabus Point 2 of *Neider:*

> "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction."

In order to determine whether first degree sexual assault includes a lesser sexual offense, it is necessary to analyze W.Va. Code, 61–8B–3.[2] It is apparent that under this statute the offense can be committed by several distinct acts. Under the evidence of this case, the relevant language of the statute is:

> "(a) A person is guilty of sexual assault in the first degree when:
>
> "(1) He engages in sexual intercourse with another person by forcible compulsion; and
>
> "(i) He inflicts serious bodily injury upon anyone; or
>
> "(ii) He employed a deadly weapon in commission of the crime; or
> "(iii) The victim was not a voluntary social companion of the actor on the occasion of the crime; or
> "(2) He engages in sexual intercourse with another person who is incapable of consent because he is physically helpless; or
> "(3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old.
> "(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned not less than ten nor more than twenty years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty years."

---

1. The relevant language of *State v. Neider,* 170 W.Va. 664–665, 295 S.E.2d at 904–05, is:

   "The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. . . .

   "The second inquiry is a factual one which involves a determination by the trial court if there is evidence which would tend to prove such lesser included offense."

2. The full text of W.Va.Code, 61–8B–3, is:

   "(a) A person is guilty of sexual assault in the first degree when:
   "(1) He engages in sexual intercourse with another person by forcible compulsion; and
   "(i) He inflicts serious bodily injury upon anyone; or

"(ii) He employed a deadly weapon in commission of the crime; or

"(iii) The victim was not a voluntary social companion of the actor on the occasion of the crime."

In order to fully understand the above terminology, it is necessary to refer to the definition of "sexual intercourse" which, under W.Va.Code, 61–8B–1(7), includes oral sex,[3] and W.Va.Code, 61–8B–1(1), defining "forcible compulsion."[4]

In *State v. Daggett, supra,* we determined that third degree sexual assault was not a lesser included offense under the facts of that case. We made this general statement with regard to the offense of sexual assault in the first degree: "First degree sexual assault also proscribes engaging in sexual intercourse by forcible compulsion and inflicting serious bodily injury, employing a deadly weapon, or committing the crime upon a victim who is not a voluntary social companion. W.Va.Code, 61–8B–3(a)(1)." *State v. Daggett,* 167 W.Va. 433, 280 S.E.2d at 558.

■ When we analyze the relevant portion of our first degree sexual assault statute we believe that several conclusions can be reached. First, where there is sexual intercourse by forcible compulsion and the defendant in addition either inflicts "serious bodily harm upon anyone" or "employ[s] a deadly weapon" he is guilty of sexual assault in the first degree. Second, as a result of the language contained in subdivision (iii) of W.Va.Code, 61–8B–3(a)(1), if the victim is not a voluntary social companion then there is no need to show an aggravated circumstance such as serious bodily injury or the employment of a deadly weapon.

■ Stated another way, where a voluntary social companion is involved, the State in proving first degree sexual assault must show the initial prerequisite of sexual intercourse by forcible compulsion on the victim. In addition, it must prove one of the aggravating circumstances, i.e., infliction of serious bodily injury or employment of a deadly weapon.

This result arises because our first degree sexual assault statute begins with the statement that "(a) [a] person is guilty of sexual assault in the first degree when: (1) [h]e engages in sexual intercourse with another person by forcible compulsion; and." There follows three enumerated subdivisions, each separated by the word "or": "(i) He inflicts serious bodily injury upon anyone; or (ii) He employed a deadly weapon in commission of the crime; or (iii) The victim was not a voluntary social companion of the actor on the occasion of the crime."

Thus, under the provisions of W.Va. Code, 61–8B–3(a)(1), relating to first degree sexual assault, we have as a threshold element of the crime the fact that there must be sexual intercourse with forcible compulsion. Additionally, the first two subdivisions give two alternate aggravating conditions: (i) inflicted serious bodily injury, *or* (ii) employed a deadly weapon. Proof of either one of these aggravating conditions is sufficient to constitute the completed offense. However, subdivision (iii) which is another alternative since it also begins with the disjunctive "or" poses a third circumstance which can complete the offense of first degree sexual assault.[5] It occurs

---

**3.** W.Va.Code, 61–8B–1(7), states: " 'Sexual intercourse' means any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person."

**4.** W.Va.Code, 61–8B–1(1), states:
  " 'Forcible compulsion' means:
  "(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or
  "(b) Threat or intimidation, expressed or implied, placing a person in fear of immedi-

ate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped.
  "For the purposes of this definition 'resistance' includes physical resistance or any clear communication of the victim's lack of consent."

**5.** In *State v. Elder,* 152 W.Va. 571, 577, 165 S.E.2d 108, 112 (1968), we stated: "The word 'or' denotes an alternative between the two phrases it connects."

when the victim is not a voluntary social companion; then sexual intercourse by forcible compulsion is sufficient to bring about first degree sexual assault.

In other words, there is no need under W.Va.Code, 61–8B–3(a)(1), as to a victim who is not a voluntary social companion, for the State to prove an aggravating circumstance, i.e., that serious bodily injury was inflicted on anyone or that a deadly weapon was employed in the commission of the crime.

■ Our conclusion is reinforced by the fact that our second degree sexual assault statute, W.Va.Code, 61–8B–4,[6] does not use the term voluntary social companion. It deals with a sexual offense which is sexual intercourse by forcible compulsion with no aggravating circumstance such as found in the first degree sexual assault statute. As we have seen in the first degree sexual assault statute where the victim is a voluntary social companion, one of the aggravating circumstances must be shown to obtain a first degree sexual assault conviction. Consequently, a defendant who subjects a voluntary social companion to sexual intercourse by forcible compulsion without one of the aggravating circumstances, i.e., infliction of serious bodily injury or employment of a deadly weapon, is guilty of second degree sexual assault.[7]

It appears that this distinction between a voluntary social companion and a nonvoluntary social companion has also been legislatively adopted in several other jurisdictions.

6. W.Va.Code, 61–8B–4, provides:

"(a) A person is guilty of sexual assault in the second degree when:
"(1) He engages in sexual intercourse with another person by forcible compulsion; or
"(2) By forcible compulsion, he causes penetration, however slight, of the female sex organ or of the anus of any person, by any inanimate object for the purpose of gratifying the sexual desire of either party.
"(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five nor more than ten years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than five nor more than ten years."

In *State v. Grover*, 460 A.2d 581, 583 (Me. 1983), the court stated that Maine, Delaware, West Virginia, and Hawaii have some type of a voluntary social companion statutory provision. As indicated in *State v. Grover*, Maine's sexual abuse statute permits utilization of the voluntary social companion concept as a defense to Class B rape. The court in *Grover* quoted from an earlier case where the voluntary social companion concept was discussed: " '[It] is prescribed by the Legislature to be of sufficient mitigating significance to justify a jury's reduction of the seriousness of the offense.' *State v. Reed*, 459 A.2d 178, 180 n. 1 (Me.1983)." 460 A.2d at 584.

The Delaware Supreme Court in *Tyre v. State*, 412 A.2d 326, 328 n. 1 (Del.1980), made this statement with regard to its first degree rape statute:

"Under our statute and the indictment in the present case, to establish rape in the first degree, the State would have had to prove the victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact in addition to the general requirements of rape, i.e., the defendant's intentional engagement in sexual intercourse without the victim's consent. 11 *Del.C.* §§ 763, 764." [8]

We have not found a Hawaiian case where the court has had occasion to speak to the voluntary social companion distinction under its sexual assault statute.[9] The

7. We construe our first and second degree sexual assault statutes *in pari materia* under the traditional rubric that statutes which relate to the same subject matter should be construed together to ascertain the legislative intent. *Newton v. Dailey,* 167 W.Va. 347, 280 S.E.2d 91 (1981); *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974).

8. It should be noted that the Delaware statute requires that in order for the higher penalty to apply, the victim must not be "the defendant's voluntary social companion on the occasion of the crime *and had not previously permitted him sexual contact."* 11 Del.Code § 764. (Emphasis added) The italicized language is not in our statute.

9. The material portions of Hawaii's statute, Hawaii Rev.Stat. § 707–730 (1981), provide:

official commentary to Hawaii's rape in the first degree statute does elaborate on the policy reasons and distinction between the voluntary and nonvoluntary social companion.[10]

The concept of the voluntary social companion had its origin in the Model Penal Code, Article 213.1 (1962).[11] In the commentary on this article similar statements are made with regard to utilization of a voluntary versus nonvoluntary social companion distinction as found in the official commentary to the first degree rape statute of the Hawaiian Code. *See* note 9, *supra.*

In summary, we believe the legislature, by enactment of W.Va.Code, 61–8B–3(a)(1) (1976), relating to sexual assault in the first degree, created a distinction between a voluntary and a nonvoluntary social companion with regard to the elements of the crime of sexual assault in the first degree. Where the victim is a nonvoluntary social companion, the State need prove only that fact and that she was subjected to sexual intercourse by forcible compulsion. Where a voluntary social companion is involved, the State must in addition show either (1) the infliction of serious bodily injury on anyone or (2) the employment of a deadly weapon in the commission of the crime. Finally, where a voluntary social companion is involved and there is sexual intercourse by forcible compulsion but without either of the foregoing aggravating circumstances, the crime is then sexual assault in the second degree under W.Va.Code, 61–8B–4 (1976).[12]

The defendant at the time the instructions were discussed asked the court to consider sexual abuse in the first degree under W.Va.Code, 61–8B–6.[13] However,

*"Rape in the first degree.* (1) A person commits the offense of rape in the first degree if:
(a) The person intentionally engages in sexual intercourse, by forcible compulsion, with another person and:
(i) The other person is not, upon the occasion, his voluntary social companion who had within the previous thirty days permitted him sexual intercourse of the kind involved; or
(ii) Recklessly inflicts serious bodily injury upon the other person."

10. "The degree and nature of the victim's acquaintance with the actor as a mitigating circumstance (or the absence of an acquaintanceship as an aggravating circumstance) is based on the theory that a person who resorts to sexual aggression against a female who has permitted previous sexual intercourse ... presents less of a social danger than the person who commits sexual aggression against a female who is not his voluntary social companion or with whom he has not been previously familiar. Moreover, a male who forces sexual intercourse in such situations does not deserve the same degree or moral condemnation, as the male who forces sexual intercourse upon a female with whom he has little or no acquaintance." Official Commentary, Hawaii Rev.Stat. § 707–730 (Rev. ed. 1976).

11. Section 213.1 of the Model Penal Code (1962) provides:
"(1) *Rape.* A man who has sexual intercourse with a female not his wife is guilty of rape if:
"(a) he compels her to submit by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping, to be inflicted on anyone; or

"(b) he has substantially impaired her power to appraise or control her conduct by administering or employing without her knowledge drugs, intoxicants or other means for the purpose of preventing resistance; or
"(c) the female is unconscious; or
"(d) the female is less than 10 years old.
"Rape is a felony of the second degree unless (i) in the course thereof the actor inflicts serious bodily injury upon anyone, or (ii) the victim was not a voluntary social companion of the actor upon the occasion of the crime and had not previously permitted him sexual liberties, in which cases the offense is a felony of the first degree."
It is noted that this provision employs an additional phrase "not previously permitted him sexual liberties" with the phrase "not a voluntary social companion," which phrase is not in our statute.

12. We note that the legislature in 1984 amended the sexual assault in the first degree statute, W.Va.Code, 61–8B–3, and eliminated the concept of the voluntary social companion. The effective date of this change is July 1, 1984. 1984 Acts Ch. 56.

13. The defendant did not argue below that the victim was his voluntary social companion. Even had he made such an argument, the court would have been warranted in submitting a first degree sexual assault charge since the State's evidence that the victim was threatened with a knife satisfied the test for forcible compulsion under W.Va.Code, 61–8B–1(1)(6). *See* note 4, *supra.* In addition, the use of the knife would also be an aggravating circumstance under W.Va.Code, 61–8B–3(a)(1)(ii), employment of a

the hallmark of this offense, which carries a penalty of one to five years, is "sexual contact" rather than "sexual intercourse."[14] By definition, "sexual contact" generally involves a touching of the sex organs or anus of another person or the breast of a female eleven years old or older for the purpose of gratifying sexual desire.[15] This is to be distinguished from "sexual intercourse" which as set out in note 3, *supra,* with one exception involves penetration.[16] *See State v. Yoshimoto,* 64 Hawaii 1, 635 P.2d 560 (1981). There was no conflict in the evidence that an act of sexual intercourse occurred and, therefore, the trial court was correct under *State v. Neider, supra,* in not instructing on sexual abuse.

## II.

The second assignment of error rests on a claim that trial counsel was ineffective because at the suppression hearing he failed to argue that the defendant's confession was taken in violation of his Sixth Amendment right to counsel. Defendant's appellate counsel filed with this Court a form purportedly signed by the defendant when he appeared before the magistrate on April 6, 1982, after he was arrested. This form indicates that the defendant requested counsel be appointed for him. His confession was obtained the following day.[17]

At the suppression hearing, the officer who took the confession testified that before taking the statement, he advised the defendant of his *Miranda* rights. He stated that the defendant voluntarily executed a written waiver of those rights which waiver was introduced at the suppression hearing. While there was some question raised at the suppression hearing as to whether the defendant had counsel appointed at the time the confession was taken, the matter was not developed by the defendant's trial counsel.

The precise issue presented is whether a written waiver of *Miranda* rights will suffice to waive the defendant's Sixth Amendment right to counsel once the defendant has been arrested, brought before a magistrate, and has requested counsel. In order to answer this question, it is necessary to understand that in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court dealt with the question of the accused's rights under the Fifth Amendment when he was being subjected to a custodial interrogation before his arrest.

The primary focus of *Miranda* was protecting the accused's Fifth Amendment right against self-incrimination which

---

deadly weapon. Had there been evidence that the victim was a voluntary social companion, the defendant might have been entitled to an instruction on second degree sexual assault under W.Va.Code, 61–8B–4, as the defendant denied threatening the victim with the knife.

**14.** W.Va.Code, 61–8B–6, provides:
   "(a) A person is guilty of sexual abuse in the first degree when:
   "(1) He subjects another person to sexual contact by forcible compulsion; or
   "(2) He subjects another person to sexual contact who is incapable of consent because he is physically helpless; or
   "(3) He, being fourteen years old or more, subjects another person to sexual contact who is incapable of consent because he is less than eleven years old.
   "(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years."

**15.** Sexual contact is defined in W.Va.Code, 61–8B–1(6), and means "any touching of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party."

**16.** "Sexual intercourse" under W.Va.Code, 61–8B–1(7), does include "contact between the sex organs of one person and the mouth or anus of another person."

**17.** We decline to analyze this error under the doctrine of ineffective assistance of counsel. However, because it is a constitutional dimension claim, we can under Syllabus Point 18 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1975), address the issue:
   "Where it appears that previously unassigned prejudicial errors involving fundamental constitutionally protected rights of an accused occurred at trial, these errors void the jurisdiction of the trial court to render a valid judgment and, as such, plainly command the notice of the appellate court."

brought about the *Miranda* requirement that he be warned of his right against self-incrimination. As an adjunct to the right against self-incrimination, the *Miranda* court also required that the accused be advised of his right to have counsel present during the interrogation but this right was based on the Fifth Amendment.[18] In *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the United States Supreme Court, in deciding the case on the Sixth Amendment right to counsel, stated:

> "Specifically, there is no need to review in this case the doctrine of *Miranda v. Arizona,* a doctrine designed to secure the constitutional privilege against compulsory self-incrimination.... For it is clear that the judgment before us must in any event be affirmed upon the ground that Williams was deprived of a different constitutional right—the right to the assistance of counsel.
>
> "This right, guaranteed by the Sixth and Fourteenth Amendments, is indispensable to the fair administration of our adversary system of criminal justice." 430 U.S. at 397–98, 97 S.Ct. at 1239, 51 L.Ed.2d at 435–36.

*See also Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Kamisar, *Brewer v. Williams, Massiah and Miranda: What is "Interrogation"? When Does It Matter?,* 67 Geo.L.J. 1 (1978).

The Supreme Court in *Brewer* found that the defendant, Williams, had been arrested on a warrant and arraigned before a judicial officer and that his Sixth Amendment right to counsel had attached:

> "Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Kirby v. Illinois,* [406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417]." (Other citations omitted)

■ We spoke to the issue of when the Sixth Amendment right to counsel attaches in *State v. Gravely,* W.Va., 299 S.E.2d 375 (1982), a case involving the right to counsel at a line-up after the defendant had been arrested and had appeared before a magistrate. There, in reliance on *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972),[19] we said:

> "In *Kirby,* the Court recognized that an accused's federal constitutional Sixth and Fourteenth Amendment right to counsel 'attaches only at or after the time that adversary judicial proceedings have been initiated against him.' 406 U.S. at 688, 92 S.Ct. at 1881, 32 L.Ed.2d at 417. The Court indicated that adversary judicial criminal proceedings could be initiated by way of 'formal charge, preliminary hearing, indictment, information, or arraignment.' 406 U.S. at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417." *State v. Gravely,* 299 S.E.2d at 380.

Consequently, in the present case, the Sixth Amendment right to counsel attached when the defendant was arrested, initially

---

18. This point was emphasized in *Edwards v. Arizona,* 451 U.S. 477, 481, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378, 384, *reh'g den.,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981):

> "In *Miranda v. Arizona,* the Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney.... The Court also indicated the procedures to be followed subsequent to the warnings. If the accused indicates that he wishes to remain silent, 'the interrogation must cease.' If he requests counsel, 'the inter-

rogation must cease until an attorney is present.' [384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723].

> "*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation."

19. Both *Gravely* and *Kirby* dealt with a defendant's right to counsel at a post-arrest line-up. In *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), the Supreme Court foreclosed the introduction of such line-up identification at trial as it was obtained in violation of defendant's Sixth Amendment right to counsel.

brought before the magistrate, and requested counsel.

Although *Brewer v. Williams, supra,* dealt with the Sixth Amendment right to counsel and whether it had been waived, its discussion of waiver centered around abstract principles.[20] In *Brewer,* the defendant after arrest and having spoken with counsel was being transported back to the county where the crime was committed. An officer accompanying the defendant mentioned the necessity of a Christian burial for the victim which ultimately prompted the defendant's inculpatory statements. The Supreme Court concluded that no waiver had been shown: "But waiver requires not merely comprehension but relinquishment, and Williams' consistent reliance upon the advice of counsel in dealing with the authorities refutes any suggestion that he waived that right." 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 440.

Some analogy may be made to cases decided under the *Miranda* Fifth Amendment right to counsel where the defendant initially requests counsel and the government attempts to show a subsequent waiver. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 *reh'g den.,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), the United States Supreme Court considered the question of whether the defendant had subsequently waived his Fifth Amendment right to counsel when at the initial custodial interrogation, after being given his *Miranda* rights, he had asked for counsel. The Supreme Court indicated that a higher level of protection is afforded where the defendant requests counsel: "[T]he Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel." 451 U.S. at 484, 101 S.Ct. at 1884, 68 L.Ed.2d at 386. It then went on to set this rule with regard to a subsequent waiver of that right:

> "[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. (Footnote omitted)[21]

We are not aware of any United States Supreme Court case where there has been occasion to discuss whether a *Miranda*

---

**20.** *Brewer's* statements were:

"[I]t was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst,* [304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466]. That standard has been reiterated in many cases. We have said that the right to counsel does not depend upon a request by the defendant ... and that courts indulge in every reasonable presumption against waiver.... This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439–40. (Citations omitted)

**21.** In *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court attempted to clarify what was meant by the defendant's "initiation" of further procedures.

The attempt resulted in a plurality opinion. We had essentially prior to *Edwards v. Arizona, supra,* adopted its rule in Syllabus Point 1 of *State v. McNeal,* 162 W.Va. 550, 251 S.E.2d 484 (1978):

"Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel."

*See also State v. Easter,* 172 W.Va. 338, 305 S.E.2d 294, 297 (1983); *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261, 267 (1982); *State v. Goodmon,* 170 W.Va. 123, 290 S.E.2d 260, 266 (1981); *State v. Sowards,* 167 W.Va. 896, 280 S.E.2d 721, 723 (1981); *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659, 666 (1980).

waiver will also waive the Sixth Amendment right to counsel after it has attached. In *Brewer v. Williams, supra,* the United States Supreme Court stated that it was possible to waive the Sixth Amendment right to counsel but did not specify how it could be done.[22] The particular language of *Brewer* is:

> "The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not,* without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not." 430 U.S. at 405–06, 97 S.Ct. at 1243, 51 L.Ed.2d at 441. (Emphasis in original)

However, it seems clear from *Brewer* and other Sixth Amendment right to counsel cases that there is no absolute prohibition against waiving such right. In *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which involved the Sixth Amendment right to counsel at a post-arrest line-up, the Court indicated that the defendant could waive his right to counsel. *See United States v. Sublet,* 644 F.2d 737 (8th Cir.1981); *Hatcher v. State,* 414 N.E.2d 561 (Ind.1981).

■ Even the defendant's right to have assistance of counsel at trial can be waived, although it is clear that a waiver of this right can only be done before the trial judge after a searching inquiry to determine that it is knowingly and voluntarily made. *Farretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Of some bearing on the waiver question is the remark made in note 16 of *Estelle v. Smith,* 451 U.S. 454, 471, 101 S.Ct. 1866, 1877, 68 L.Ed.2d 359, 374–75 (1981), where the Supreme Court found that court testimony resulting from a court-ordered psychiatric examination of the defendant made without notice to defense counsel violated the defendant's Sixth Amendment right:

> "We do not hold that respondent was precluded from waiving this constitutional right. Waivers of the assistance of counsel, however, 'must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends ... "upon the particular facts and circumstances surrounding [each] case...." ' [*Edwards v. Arizona,* 451 U.S. at 482, 101 S.Ct. at 1884, 68 L.Ed.2d at 384], quoting *Johnson v. Zerbst,* [304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466.] (1938). No such waiver has been shown, or even alleged here."

These expressions from the United States Supreme Court strongly suggest that a per se rule against waiver of the Sixth Amendment right to counsel will not be sanctioned. Regretfully, they offer little guidance as to what limitations on waiver are appropriate.

If we conclude, as we do that there is no per se rule against waiver of the Sixth Amendment right to counsel, then the central inquiry is whether there are valid reasons for a stricter standard of waiver than for the Fifth Amendment right to counsel imposed by *Miranda.* In *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980), the Supreme Court noted that there were different policies underlying these two constitutional protections. It did not, however, elaborate on the distinctions.

In *Kirby v. Illinois, supra,* the Court recognized that once the formal adversarial procedure has been initiated by the government against the defendant, it has committed itself to prosecute. Prior to this time, as the court in *United States v. Mohabir,* 624 F.2d 1140, 1149 (2nd Cir.1980), pointed

---

**22.** The few Sixth Amendment right to counsel cases decided after *Brewer* are not helpful on the waiver issue. In *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Court applied the Sixth Amendment to bar incriminating statements made by a defendant in jail awaiting trial who had counsel. The statements were obtained by a jail informant who had been instructed by the government agents to solicit the defendant for information.

In *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), an express waiver of the Fifth Amendment right to counsel was found but the Court avoided the waiver question under the Sixth Amendment since it had not been raised below. On remand, the circuit court of appeals concluded that the defendant's written *Miranda* waiver was sufficient to waive his Sixth Amendment right to counsel. *Fields v. Wyrick,* 706 F.2d 879 (8th Cir.1983).

out, the defendant by cooperating with the government may be able to avoid any legal entanglement. Thus, a defendant's willingness to waive his Fifth Amendment right to counsel prior to the institution of an adversarial procedure may produce some positive benefit for him. However, once formal proceedings have commenced, such a benefit has markedly decreased, without the benefit of counsel. Moreover, once the adversarial process begins, it is apparent that the government has committed the full weight of its prosecutorial forces against the defendant. To require him to stand against them unassisted by counsel is markedly unfair unless there can be shown a higher level of a knowing and intelligent waiver of the Sixth Amendment right to counsel.

The Second Circuit Court of Appeals in *United States v. Mohabir*, 624 F.2d at 1153, stated that once the Sixth Amendment right has attached "a valid waiver of the Sixth Amendment right to have counsel present during post-indictment interrogation must be preceded by a federal judicial officer's explanation of the content and significance of this right."

The Fifth Circuit Court of Appeals has indicated that the focus of a Sixth Amendment right-to-counsel waiver is that the government must show that "the defendant knowingly and intelligently relinquished his right not to be questioned in the absence of counsel." *United States v. Shaw*, 701 F.2d 367, 380 (5th Cir.1983). *See also Jordan v. Watkins*, 681 F.2d 1067 (5th Cir.1982). In both of these cases, the court found that a written waiver made in the absence of counsel properly waived the Sixth Amendment right.

The California courts have taken the position that once a defendant's Sixth Amend-

ment rights have attached, police-initiated interrogation is absolutely barred even if the defendant has been given *Miranda* warnings, unless counsel has been notified. *See People v. Superior Court of Fresno County*, 145 Cal.App. 581, 194 Cal.Rptr. 525 (1983); *In Re Michael B.*, 125 Cal. App.3d 790, 178 Cal.Rptr. 291 (1981); *In Re Garth D.*, 55 Cal.App.3d 986, 127 Cal.Rptr. 881 (1976); *People v. Valencia*, 267 Cal. App.2d 620, 73 Cal.Rptr. 303 (1968); *People v. Isby*, 267 Cal.App.2d 484, 73 Cal.Rptr. 294 (1968). The California Supreme Court has not spoken to this issue.

New York's highest court, based on its own constitution and relying on earlier cases, has held that "an 'indelible' right to counsel attaches upon the commencement of formal adversary proceedings ... [t]hus, [a defendant] cannot make an effective waiver of his rights to remain silent and to have the assistance of counsel unless his attorney is present at the time of the waiver. This is so even in instances where the accused has neither retained nor requested an attorney." *People v. Cunningham*, 424 N.Y.S.2d 421, 424, 49 N.Y.2d 203, 208, 400 N.E.2d 360, 363 (1980). Recently, the Supreme Court of Oregon came to the same position in *State v. Sparklin*, 296 Or. 85, 672 P.2d 1182 (1983), based upon its own constitution.

In *State v. Norgaard*, 653 P.2d 483 (Mont.1982), the court found no violation of the defendant's Sixth Amendment right to counsel even though the police questioned him on their own initiative after counsel had been appointed. The court stated that "[t]he vast majority of jurisdictions have upheld counsel-less waivers which were obtained after written or oral warnings have been given." 653 P.2d at 487.[23]

---

**23.** In five of the cases cited in *State v. Norgaard, supra,* the incriminating statements were made after the defendant initially expressed a desire to talk to the police and agreed to waive his right to counsel. *State v. Ruth*, 102 Idaho 638, 637 P.2d 415 (1981); *People v. Aldridge*, 68 Ill. App.3d 181, 24 Ill.Dec. 484, 385 N.E.2d 396 (1979), *aff'd*, 79 Ill.2d 87, 37 Ill.Dec. 286, 402 N.E.2d 176 (1980); *State v. Costa*, 228 Kan. 308, 613 P.2d 1359 (1980); *Watson v. State*, 35 Md. App. 381, 370 A.2d 1149 (1977), *aff'd*, 282 Md.

73, 382 A.2d 574, *cert. denied*, 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978); *People v. Green*, 405 Mich. 273, 274 N.W.2d 448 (1979). *See also State v. Jackson*, 205 Neb. 806, 290 N.W.2d 458 (1980) (one of two incriminating statements was clearly volunteered, and the opinion does not indicate whether the other one was as well). This situation is different from that where the police initially contact the defendant to see if he is willing to waive his right to counsel. The waiver problem is less acute

In *State v. Burbine*, 451 A.2d 22 (R.I. 1982), the court held the Sixth Amendment right to counsel had been waived where the defendant after his arrest executed a *Miranda* waiver and gave a confession. The facts also showed that an attorney had called the police station to advise of his representation and was advised that the defendant would not be interrogated that evening. However, the defendant had not asserted his right to counsel either to a magistrate or to the interrogating officers before the *Miranda* waiver was taken. *See also State v. Bledsoe*, 33 Wash.App. 720, 658 P.2d 674 (1983).

We believe that there is no per se rule against a waiver of the Sixth Amendment right to counsel. We do, however, hold that a waiver of the Sixth Amendment right to counsel should be judged by stricter standards than a waiver of the Fifth Amendment right to counsel. Furthermore, we do not equate a general request for counsel at the initial appearance before a magistrate as foreclosing in all cases the right of police officials to initiate a further discussion with the defendant to determine if he is willing to waive his Sixth Amendment right to counsel for purposes of procuring a confession.[24]

A limitation on this rule is illustrated by *United States v. Campbell*, 721 F.2d 578 (6th Cir.1983), where the interrogating officer had appeared with the defendant before the magistrate and had heard him request counsel. The officer then began an interrogation which led to a confession. This confession was ruled inadmissible on Sixth Amendment grounds.

Furthermore, because of the higher standard against which the Sixth Amendment right-to-counsel waiver is measured, we hold that once the Sixth Amendment right to counsel has attached, it can only be waived by a written waiver signed by the defendant.[25] It must also be shown at the time that the waiver is executed that the defendant was aware that he was under arrest and had been informed of the nature of the charge against him. These elements must be shown in addition to the customary *Miranda* warnings.

Finally, if at the time waiver is sought, the defendant indicates his desire to have counsel to the interrogating officer, interrogation must cease until counsel is made available to him, unless the defendant initiates further communications with the police evidencing his desire to waive his Sixth Amendment right to counsel.[26] This is the *Edwards v. Arizona* formula under the Fifth Amendment right to counsel which must be deemed to carry over to the Sixth Amendment right to counsel.

In the present case, the fact of the defendant's signing of the magistrate form indicating his desire for counsel was not presented to the circuit court. The form was attached to the defendant's appellate brief by counsel who was appointed on

where the defendant initially volunteers his desire to discuss the crime.

We note that our own case of *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980), was erroneously cited in *Norgaard* as dealing with the Sixth Amendment right to counsel. In *Clawson*, the defendant was represented by counsel on a sexual offense charge. We found that he had waived his right to counsel at the time of an interrogation with regard to two unrelated murder charges by signing a *Miranda* waiver form. We found the Sixth Amendment inapplicable because the defendant had not been arrested on the murder charge.

**24.** We do not believe that a general request for counsel can be equated with the *Edwards v. Arizona* direct request for counsel to the interrogating officers. From the Sixth Amendment right to counsel standpoint, the right attaches

regardless of whether a specific request is made. *See Brewer v. Williams*, 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439, *citing Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70, 76 (1962). Furthermore, it seems to us that one ingredient in judging the issue is the interrogating officer's knowledge that a request for counsel has been made.

**25.** In a case predating *Edwards v. Arizona, supra*, we said that where a defendant had requested counsel in a Fifth Amendment context, the State, in order to show a subsequent waiver, had an even heavier burden "best borne by a written statement signed by the defendant." *State v. Bradley*, 163 W.Va. 148, 153, 255 S.E.2d 356, 358 (1979).

**26.** Even though the defendant does initiate further communication, any waiver of the Sixth Amendment must still be in writing.

appeal and who was not trial counsel. The record is not, however, factually developed on the circumstances surrounding the signing of the form and the related matters as outlined in this opinion. In such a situation in the past, we have remanded the case to the circuit court for the taking of additional evidence to determine the validity of the defendant's statement under the legal principles developed. *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251, 254 (1982); *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914, 915 (1981); *State v. Clawson, supra.* Such further inquiry will determine whether the confessions should be set aside and a new trial awarded or whether the conviction should be affirmed.

We, therefore, remand the case to permit the circuit court to hold an *in camera* hearing to determine whether, under the guidelines herein set out, the defendant waived his Sixth Amendment right to counsel.

Remanded.

HARSHBARGER, Justice, dissenting:

I concur in Part I of the majority opinion and with Syllabus Points 1 and 2. I disagree with Part II and Syllabus Points 3 and 4, and therefore, dissent.

Wyer, when presented to a magistrate to be informed of the charges against him, checked a box on the magistrate's form that indicated he wanted counsel appointed for him. But before a lawyer was appointed, police obtained a *Miranda* rights waiver and after interrogation he gave them a statement. Was his written request for counsel sufficient invocation of his right to counsel to prohibit police from further questioning? Of course, it was.

That this problem is here in 1984 indicates how uncertain the whole area of right to counsel has become. When does it attach? Where does it come from? When may it be waived, and how? The administration of justice is impaired when these questions remain unresolved. If lawyers and judges still struggle for answers and cannot agree, how can well-meaning law enforcement officers know what behavior by them will make statements inadmissible and jeopardize their cases? Do these doubtful areas permit unscrupulous officers to wheedle confessions out of confused accuseds?

Crucial problems about defendants' right to counsel are present in Wyer's situation, and also when defendants assert that they orally requested lawyers, police claim they did not, police continue questioning, and statements are elicited. In both the written and oral request cases, defendants move to suppress, there are *in camera* hearings; and if a statement is admitted, the fact of waiver is reargued to the jury and appealed to us.[1] *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1982); *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978).

Are we wedded to a system that requires these continual judicial inquiries into whether confessions were taken in violation of a defendant's right to counsel, or is there a fairer and more efficient solution?

Justice Miller eruditely analyzes federal fifth and sixth amendment cases about rights to counsel. Fortunately, we do not have to decide federal constitutional rights because Wyer is in our West Virginia court system, governed by West Virginia laws and our state constitution. *See Herb v. Pitcairn*, 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945); *Minnesota v. National Tea Co.*, 309 U.S. 551, 60 S.Ct. 676, 84 L.Ed. 920 (1940); *Fox Film Corp. v. Muller*, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935). When state standards are complied with, but a defendant still claims his federal rights have been abridged, then we must look to the federal constitution and United States Supreme Court decisions. This is an important and basic rule of federalism to which I strongly adhere. For that matter,

---

**1.** Another problem of like nature occurs when a defendant asserts that his waiver of his *Miranda* rights was not voluntary as opposed to violating his right to counsel. Reasons for this claim may include psychological disorder, mental retardation, promises or threats made by police, drug or alcohol intoxication. The rule I espouse later in this dissent could alleviate much of the prolific litigation about voluntariness of confessions as well.

I understand that the United States Supreme Court does also.

Matters raised in Wyer's appeal are controlled by state law, and the majority's discussion of federal rules to resolve them must be *dicta*. Federal examples may be persuasive authority if they conform to our constitutional provisions and our perceptions of justness and fairness; but we are not bound by them here. This dissent rests on adequate and independent state law. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

However, I can observe that our federal brethren have woven a tangled web regarding right to counsel. That right, found in the sixth amendment and applicable to the states by the fourteenth, has, through subtle mechanations and incantations, become incorporated in the fifth amendment privilege against self-incrimination. The interface of the fifth and sixth amendment rights in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), is sensible and hardly obscure. Yet, somewhere along, seeking fairness, we, the judiciary, took a wrong fork and reached imperspicuity.

As I understand *Miranda*, the Supreme Court decided that to prevent governmental abridgement of one's fifth amendment privilege against compulsory self-incrimination, a citizen must be informed that he has a right to remain silent; that anything he says may be used against him; and that he has a right to counsel regardless of his ability to afford a lawyer. Right to counsel is an important safeguard in preventing circumscription of the privilege against compelled self-incrimination. This truth does not, however, convert the right to counsel into a fifth amendment right. It is

still a sixth amendment right. The fifth amendment requires that suspects be told about the sixth amendment, but it does not turn their right to counsel into part of the fifth.

When analyses started distinguishing between fifth and sixth amendment counsel rights, as our majority did here, confusion resulted, rather than fairness and predictability as the black letter *Miranda* rule intended.

No court would dispute the value of a criminal defendant's opportunity to consult with his attorney before and during police interrogation. The United States Supreme Court has been adamant that when a defendant in custody requests a lawyer, all interrogation must cease. *Edwards v. Arizona, supra.*[2] We have agreed and articulated the same rule for West Virginia, *State v. Louk, supra,* even before the United States Supreme Court, *State v. McNeal, supra.* This right is critically important and deserves an absolute prohibition against manipulation or ruse.

Justice Miller has elaborated on this distinction between fifth and sixth amendment rights to counsel in the majority opinion and in Syllabus Points 3 and 4.[3] A fifth amendment right to counsel is absolutely protected against abridgement once exercised, but is not entitled to the same high quality of protection as the sixth amendment right to counsel. *See* Syllabus Points 3 and 4 of majority opinion.

There's the rub. Prior to interrogation (whether or not the defendant has been charged with a crime) when he or she orally requests a lawyer, the fifth amendment

**2.** We recognize the exception for those rare cases when a defendant initiates conversation with the police after he has asked for a lawyer. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Louk*, W.Va., 285 S.E.2d 432 (1982).

**3.** His understanding about rights guaranteed to us by our federal constitution may coincide with the United States Supreme Court. I cannot say, for I find much confusion in their writings on this matter. I cannot distinguish between the rights nor comprehend the policies behind

making the differentiation. The question of the fifth amendment right to counsel is not before us in this case, as the issue raised is under the sixth amendment. Therefore, I will discuss the matter as if the distinction is meaningful, if for no other reason than to justify my dissent from the majority's rationale. I will leave for another day, and more appropriate case, my displeasure with our Court permitting the distinction to prevail. Pre- and post-presentment confessions have the same effect in a defendant's trial. *See generally*, discussion of right to counsel in adversary contexts with defendant present in *United States v. Wade*, 388 U.S. 218, 236, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149, 1162 (1967).

counsel right prevents further interrogation. *Miranda* waivers are ineffective. After a defendant has been charged, that is, presented to a magistrate and informed about the nature of the charge, his sixth amendment right to counsel attaches [4] and he has even greater protections against its waiver. That is what Syllabus Point 4 states.

One would conclude that if a *Miranda* waiver is inadequate to protect a fifth amendment counsel request made during or before interrogation, it would certainly be inadequate to protect the greater sixth amendment counsel right from waiver.

Yet, what we are saying is that a defendant who has made a written request for a lawyer at a magistrate's office may still be questioned the next day, sign a *Miranda* waiver, and make a statement regardless of the sixth amendment. The majority would permit all of the above to occur before an accused has ever consulted with his attorney! His automatically attached sixth amendment rights seem less, not greater. The reasoning leads to the absurd conclusion that an oral request for counsel during interrogation gets greater weight than a written one before interrogation begins! [5]

---

**4.** *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982).

**5.** Justice Marshall agreed with precisely this point in his dissent from denial of certiorari in *Johnson v. Virginia,* 454 U.S. 920, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981). Certiorari was denied because the petition had not been timely filed. Marshall believed the court should have waived the requirement because the Virginia Supreme Court's decision was "so clearly in conflict with *Edwards.*" *Id.,* at fn. 2. We quote his dissent at length because it is directly on point:

"The facts of this case are remarkably similar to those of *Edwards v. Arizona.* On December 12, 1977, petitioner was arrested by Virginia authorities and charged with robbery, premeditated murder in the commission of armed robbery, and use of a firearm in the commission of murder. At his arraignment the next day, petitioner asked the court to appoint counsel. An attorney was appointed. That afternoon, however, before petitioner had an opportunity to confer with his lawyer, a local police detective visited him in jail. This detective later testified that he neither knew nor cared whether petitioner had requested an attorney. The detective informed petitioner of his *Miranda* rights and obtained petitioner's signature on a waiver form. He then initiated an interrogation session. During the course of this interrogation, petitioner confessed. Before his trial, petitioner moved to suppress the confession, arguing that he had not knowingly and intelligently waived his right to counsel. The trial court ruled the confession admissible and the Virginia Supreme Court affirmed. Petitioner was subsequently convicted.

"Under the circumstances, I think it clear that *Edwards* bars the use of petitioner's confession. Having exercised his right to consult with an attorney, petitioner should not have been subjected to interrogation by the authorities until counsel had been made available. The State attempts to distinguish *Edwards* on two grounds. First, it points out that *Edwards* clearly expressed his desire to deal with police only through counsel, whereas petitioner here simply asked that an attorney be appointed. However, an accused is under no obligation to state precisely why he wants a lawyer. If we were to distinguish cases based on the wording of an accused's request, the value of the right to counsel would be substantially diminished. As we stated in *Fare v. Michael C.,* 442 U.S. 707, 719, 61 L.Ed.2d 197, 99 S.Ct. 2560 [2568] (1979), 'an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease.'

"Second, the State notes that *Edwards* informed the police of his desire for an attorney, whereas petitioner only informed the judge at his arraignment. The State suggests that since the police did not know about petitioner's request, the interrogation was not improper. However, the police could easily have determined whether petitioner had already exercised his right to counsel; presumably, a prosecutor was present at the arraignment. They did not know about petitioner's request for a lawyer only because they made no effort to determine whether such a request had been made. But even if the police could not have discovered that petitioner had expressed a desire for an attorney, I would hold that the confession should not have been whether petitioner's waiver of his right to counsel was knowing, intelligent, and voluntary. In determining whether these conditions were satisfied, the fact that the police were unaware of a prior request for counsel is only tangentially relevant. What is important, rather, is the state of mind of the accused. I think it is no more safe to assume that a waiver is valid when an accused has made a prior request to the judge at his arraignment, than when he has made the request to police. In both cases, the accused informs an individual in authority that he would like an attorney—and yet shortly thereafter, state officials, apparently disregarding his request, ask him to waive his rights." (Footnotes omitted.) *Johnson v. Virginia,* 454 U.S. 920, 921–923, 102 S.Ct. 422, 423–424, 70 L.Ed.2d 231, 232–233 (1981) (Marshall, J., dissenting).

It would logically seem that a written request for counsel should provide even greater protection against subsequent approaches by police because, if nothing else, it obviates the inevitable "swearing contest" between defendant and police about whether a lawyer was ever requested. *Cf.*, *State v. Easter*, 172 W.Va. 338, 305 S.E.2d 294 (1983).

The sixth amendment right attaches when adversary judicial proceedings are initiated by the government. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois*, 406 U.S. 682, 683, 92 S.Ct. 1877, 1879, 32 L.Ed.2d 411 (1972). It does not require a request by defendant. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 888, 8 L.Ed.2d 70 (1962). In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the United States Supreme Court found statements elicited by government agents from an indicted defendant in absence of counsel to be inadmissible. Citing *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, Justice Stewart stated:

[A] Constitution which guarantees a defendant the aid of counsel at such a trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less, it was said,

might deny a defendant "effective representation by counsel at the only stage when legal aid and advice would help him." 360 U.S., at 326, 79 S.Ct., at 1209 (Douglas, J., concurring).

.　　.　　.　　.　　.

[This] reflects a constitutional principle established as long ago as *Powell v. Alabama*, 287 US 45, 77 L ed 158, 53 S Ct 55, 84 ALR 527, where the Court noted that "... during perhaps the most critical period of the proceedings ... that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation [are] vitally important, the defendants ... [are] as much entitled to such aid [of counsel] during that period as at the trial itself." Id. at 57, 55 S.Ct. at 59, 77 L.Ed. 164. *Massiah v. United States, supra* 377 U.S., at 204–205, 84 S.Ct. at 1202, 12 L.Ed.2d at 249–250.

In *State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982), we ruled that adversary proceedings commence when a defendant is presented to a magistrate, i.e., at presentment when he is statutorily required to be informed about the nature of the charges against him and about his right to counsel. W.Va.Code, 62–1–6. Assuming arguendo that this is the point where the right attaches, and not sooner,[6] Syllabus Point 4 is entirely superfluous. The majority empha-

---

**6.** I believe the formal adversary process includes any police investigation when the interrogee is the focus of an investigation. *See generally, Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Our state constitutional right to counsel, comparable to the sixth amendment right, should attach before presentment for purposes of interrogation, lineups and showups. As the United States Supreme Court said in *Escobedo*, 378 U.S. at 486, 84 S.Ct. at 1762, 12 L.Ed.2d at 983–984:

"[Preindictment interrogation] was a stage surely as critical as was the arraignment in *Hamilton v. Alabama*, 368 US 52, 7 L ed 2d 114, 82 S Ct 157, and the preliminary hearing in *White v. Maryland*, 373 US 59, 10 L ed 2d 93, 83 S Ct 1050. What happened at this interrogation could certainly 'affect the whole trial,' *Hamilton v. Alabama, supra*, 368 US at 54 [82 S.Ct. at 158] 7 L ed 2d at 116, since rights 'may be as irretrievably lost, if not then and there asserted, as they are when an accused represented by coun-

sel waives a right for strategic purposes.' Ibid. It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment.

.　　.　　.　　.　　.

"The rule sought by the State here, however, would make the trial no more than an appeal from the interrogation; and the 'right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination.' *In re Groban*, 352 US 330, 344, 1 L ed 2d 376, 387, 77 S Ct 510 [519] (Black, J., dissenting). 'One can imagine a cynical prosecutor saying: "Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial." ' *Ex parte Sullivan*, 107 F Supp 514, 517–518." (Footnote omitted.)

sized that defendant's sixth amendment right is better protected against waiver than his fifth amendment right and hence erected "more stringent" barriers to waiver. It has required a written waiver and that defendant must have been advised of the nature of the charge against him and must know he is under arrest. As we just said, those events are already statutory prerequisites to the attachment of our constitutional counsel right.

Waivers must be voluntary, knowing and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938); *Edwards v. Arizona, supra.* The state has the burden to prove waiver by a preponderance of the evidence. *State v. Rissler*, 165 W.Va. 640, 270 S.E.2d 778 (1980). If the Sixth Amendment does not even require that a request for counsel have been uttered for the right to attach, and it is fundamental to justice that a defendant has that right to legal advice before the State's case is sealed by pretrial interrogation, how can the State meet its burden to show waiver? A written waiver should not suffice because a written waiver does not even suffice to waive a fifth amendment counsel request in an *Edwards* situation. An *Edwards* request for counsel which stops all questioning and further interrogation, should not be accorded greater weight that an invocation of a sixth amendment right to counsel in writing before a magistrate, before police questioning. *Edwards* was decided on the lesser fifth amendment counsel right because the sixth amendment right had not yet attached under Arizona law. *Id.*, fn. 7. In that footnote the court stated that *Massiah* held "that the Sixth Amendment right to counsel arises whenever an accused has been

indicted or adversary criminal proceedings have otherwise begun and that this right is violated when admissions are subsequently elicited from the accused in the absence of counsel." That clearly covers Wyer's case. If we decided this case on the sixth amendment, Wyer should prevail.

Our state due process and right to counsel clauses, W.Va. Const. art. III, §§ 10 and 14, control this case. While they do not create a *per se* rule against waiver, they assure what I believe is a correct, simple solution: that a defendant's right to counsel cannot be waived unless his counsel is notified and defendant has been afforded his lawyer's advice. This rule would eliminate much of the confusion and consequent litigation on matters of right to counsel. It is simple and easy to apply.[7] Upon a defendant's request at the magistrate's for an attorney to represent him—whether that request was oral or written—his right to counsel becomes a matter of record.[8] From that moment on, police may not question him or her without first notifying his lawyer. It does not matter whether the officer doing the questioning was present in magistrate court or not. It is the duty of any officer or prosecutor to know whether a defendant has been presented and, if so, to contact defendant's counsel before interrogating him.

When police officials notify defense counsel about a desire to question a defendant, and counsel informs them that he or she needs to speak with the defendant before questioning may continue, then police *may not* approach defendant until after that meeting has occurred. No competent attorneys would permit interrogation of their clients in their absence without hav-

---

**7.** I would make it applicable to all pre- and post-presentment interrogations, but the issue of pre-presentment interrogation is not before the court today. Therefore, I limit its applicability to post-presentment interrogations.

**8.** The Supreme Court has made it clear that once the right to counsel has attached, a violation of defendant's rights is not dependent upon the *bona fides* of the investigating officer. The focus must be on the rights of the accused, not the innocence or culpability of police. *Cf., United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct.

2392, 2400, 29 L.Ed.2d 342, 353 (1976); *Battie v. Estelle*, 655 F.2d 692, 699 (5th Cir.1981); *United States v. Brown*, 699 F.2d at 588, 589 (2d Cir. 1983). Once defendant has been presented, all police officers have a duty to know his right to counsel has attached. I heartily disagree with the majority's conclusion in footnote 24, *supra*. What is the substantive difference to the defendant if the officer knew or did not know he requested counsel? A confession thus elicited is equally damaging to a defendant's effective representation by counsel.

ing discussed the matter and informed them about all the options they have. If a defendant then chooses to forego his right, his attorney can corroborate his waiver. In most cases, counsel will insist upon being present.

This rule would not prevent confessions. It only *guarantees that confessions will not be taken by violating a defendant's right to counsel* and helps *assure they will be voluntary* —standard prerequisites to their admissibility. Inadmissible and questionably admissible confessions complicate rather than expedite prosecutions. The United States Supreme Court brilliantly blasted this "lack of confessions" argument in *Escobedo v. Illinois, supra* 378 U.S., at 488–490, 84 S.Ct., at 1763–1765, 12 L.Ed.2d 984–986, where it concluded:

> This Court also has recognized that "history amply shows that confessions have often been extorted to save law enforcement officials the trouble and effort of obtaining valid and independent evidence ...." *Haynes v. Washington,* 373 US 503, 519, 10 L ed 2d 513, 524, 83 S Ct 1336 [1346].
>
> We have also learned the companion lesson of history that no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights. No system worth preserving should have to *fear* that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system. (Footnotes omitted.)

Practically, defendants who want to confess to relieve their guilt would still do so, with their attorneys present. Their lawyers could intervene to clarify potential problems of alleged promises or threats made by the government, and could evalu-

ate their clients' mental or physical capacities to waive rights. Lawyers' presence or participation in the confession process would assure that defendants' rights were honored and the process was fair. Right to counsel disputes would disappear. Disputes over voluntariness of post-presentment statements would become negligble because counsel would have solved problems before they occurred. Lawyers' presence at post-presentment interrogation would serve the same purposes that the United States Supreme Court recognized to be useful at post-indictment line-ups, in *United States v. Wade,* 388 U.S. 218, 236, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149, 1162 (1967):

> Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial line-up [and confession], which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment line-up was a critical stage of the prosecution at which he was "as much entitled to such aid ... as at the trial itself." [9] (Citations omitted.)

I need not repeat Justice Miller's extensive research about jurisdictions that have adopted *per se* rules in these circumstances: other jurisdictions have made that wise decision based on their constitutions and rule-making powers. If New York, Oregon and California can function with similar rules, we certainly can. We strongly recommend the reader to cases cited in the majority's opinion. Even if no other state had taken this step, I would not hesitate to adopt this no-waiver-without-counsel rule. Justice and judicial economy require it.

I recognize that a defendant can waive counsel. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). I do not change that rule, but would hold that a defendant can only waive

---

**9.** If police and prosecutors can function with the *Wade* and *Massiah* rules requiring defense counsel notice of a post-indictment lineup or post-indictment questioning, they can manage with a similar rule for post-presentment confessions.

this right after notice to counsel and upon his lawyer's advice. We have made similar rules in *State v. Jackson,* 171 W.Va. 329, 298 S.E.2d 866 (1982) (psychological problems), and *State ex rel. J.M. v. Taylor,* 166 W.Va. 511, 276 S.E.2d 199 (1981) (juveniles), and it is time to recognize that all defendants without counsel are constitutionally disadvantaged when faced with a government armory of armed police, prosecutors and professional interrogators. *Cf., United States v. Ash,* 413 U.S. 300, 308–310, 93 S.Ct. 2568, 2573–2574, 37 L.Ed.2d 619, 626 (1973).

I would make a syllabus point that a general written request for counsel bars *any* further police or prosecutorial questioning until the requester has talked to his lawyer.