THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESTER RONALD ALDRIDGE, Defendant-Appellant.

Fourth District    No. 14646

Opinion filed January 30, 1979.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and Marc D. Towler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Following a jury trial, defendant Lester Ronald Aldridge was convicted of murder and was sentenced to a term of imprisonment of not less than 90 nor more than 120 years. Upon appeal, we affirm his conviction.

It is unnecessary to detail the brutal facts of the offense. A young woman was shot to death in a rural area of Sangamon County. Some time after her death, this defendant was arrested for an unrelated offense but

was not held. In connection with that arrest, defendant's weapon was seized and it was subsequently determined to be the gun which had killed the victim here.

On April 30, 1976, defendant was stopped on the street by sheriff's officers and interrogated. His home and car were searched with his consent. The defendant was taken to the scene of the homicide for which these charges were subsequently brought. While at the crime scene, defendant was warned that should he attempt to flee, he would be stopped with force, the implication being that he would be shot. Upon the group's return to the sheriff's office, questioning of the defendant continued. Defendant's attorney appeared later in the evening at the sheriff's office and demanded access to his client. The questioning ceased after defense counsel advised his client not to cooperate further. Defendant was then released. There is no evidence that the admonitions required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were given to defendant on this date or that any evidence was obtained by this interrogation.

The investigation of the homicide finally resulted in defendant's arrest on June 14, 1976. The chronology that follows is essential in understanding the subsequent issue raised on appeal concerning the confession made by defendant.

On June 28, 1976, according to defendant's testimony, he was taken to a room in the jail for questioning by sheriff's officers. Upon defendant's request for his attorney, rather than ceasing the interrogation as should have happened under *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, the questioning continued. The sheriff's officers repeatedly urged defendant to confess, but with no success. Defendant was moved to the deadlock area of the jail the next day, allegedly for observation because of problems defendant was having with other inmates. In deadlock, defendant, segregated from the other prisoners, was placed in a cell about six or seven feet square, not given a sheet or blanket for his mattress, and limited to three cups of coffee and one pack of cigarettes a day. Up to that time, defendant had been consuming large quantities of both cigarettes and coffee.

On July 1, 1976, defendant's attorney filed a petition for an injunction against the sheriff's department to prevent sheriff's officers from questioning defendant outside the presence of his counsel. At the hearing held on that petition, the sheriff explained his reasons for placing defendant in deadlock. Defendant testified he had no desire to talk to the sheriff nor his deputies outside the presence of his attorney. The petition for an injunction was denied. However, before he did so, the trial judge stated:

"They [sheriff's office] now know in open court he has a lawyer.

They now know he has said he doesn't want to talk to them about the case without his lawyer."

On July 26 and 27, 1976, the defendant was examined by Dr. Philip Bornstein, a licensed psychiatrist, to determine whether he was fit to stand trial. Dr. Bornstein concluded and so indicated in his testimony at the suppression hearing that the defendant was at that time unfit to stand trial, unable to cooperate fully with his attorney, and that he did not appear to fully appreciate the gravity of the charges against him.

Defendant was formally charged with murder on July 28, 1976. On August 2, 1976, defendant approached a jailer and expressed his desire to confess the crime with which he had been charged. He signed a waiver of rights form and was also orally advised of his *Miranda* rights. One detective testified that defendant specifically waived the presence of his counsel when that detective offered to call the attorney. Defendant then made a statement to sheriff's officers, signing the transcript of that statement. During this interrogation, defendant several times indicated a desire not to continue describing the details of the offense, but the officers continued to question him.

A motion to suppress this confession was filed on September 8, 1976, and that motion was denied. The trial court found defendant to have freely and knowingly waived his right to counsel in making the confession. That ruling came upon evidence showing not only the chronology described above, but also that upon release from deadlock, defendant was not put back into the general jail population but rather was placed into the detention area of the jail. Defendant was moved from the detention area four days after he confessed to the crime, and returned to the jail proper.

At the suppression hearing, the trial court also heard evidence from a psychiatrist that, upon the basis of two interviews, it was his opinion that defendant was unfit to stand trial, and that at the time of the confession, was unable to knowingly waive his *Miranda* rights. The State, in opposition, elicited testimony from members of the sheriff's department that defendant was well oriented at the time he gave his confession. The psychiatrist reversed his judgment and pronounced defendant fit to stand trial after additional interviews which followed this hearing.

■ There is no question that a defendant may waive the presence of counsel at an interrogation even though the police know defendant has retained counsel and that counsel is not notified of the interrogation. (*People v. Morgan* (1977), 67 Ill. 2d 1, 364 N.E.2d 56; *People v. Kelley* (1973), 10 Ill. App. 3d 193, 293 N.E.2d 158.) However, in arguing that defendant waived his right to the advice of counsel, the State carries a heavy burden to prove that waiver was the product of a knowing, free, and intelligent choice. *People v. Washington* (1977), 68 Ill. 2d 186, 369

N.E.2d 57, *cert. denied* (1978), 435 U.S. 981, 56 L. Ed. 2d 72, 98 S. Ct. 1631.

Members of the sheriff's office badgered defendant to confess to this offense before and after his arrest. Prior to the arrest, defendant was threatened with violence if he gave an indication of flight. After arrest, defendant was removed—for whatever reason—from the general jail population when he declined to be interrogated without his attorney being present. This combination of punitive treatment and constant pressure, together with the possibility of defendant's unfitness to stand trial, renders his waiver of the right to have the advice of counsel more than suspect.

Two New York cases are instructive. In *United States v. Wedra* (S. D. N.Y. 1972), 343 F. Supp. 1183, the court held the failure of the authorities to call the defendant's attorney prior to questioning was tantamount to a denial of a request for an attorney even though the request to be called was made by defense counsel and not by defendant. In *People v. Hobson* (1976), 39 N.Y.2d 479, 384 N.Y. Supp. 2d 419, 348 N.E.2d 894, it was held that a defendant could not waive his right to counsel in the absence of his attorney. We do not adopt the rule of those cases, but do find them analogous to the situation here which presents a more crystalline example of abuse by the State of the notion that once counsel is in place, he must be allowed to accompany his client into meetings with officers of the State where questions are asked. Rather, we look to the recent United States Supreme Court decision in *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232.

In *Williams*, police officers were under strict instructions from defense counsel not to question defendant during the time they transported him from the place of arrest to the venue of trial. The police officers did not directly interrogate defendant, but worked on his emotions so that he, as a direct consequence, confessed to the crime. We are not presented here with so blatant an attempt to manipulate the will and emotions of this defendant. However, the manipulation here, albeit more subtle, may have had the same result. This defendant was threatened, cajoled, and treated punitively within the county jail. Whether this was done with the intent to break defendant down and induce a confession, the evidence does not show. Whether intended or not, under such circumstances defendant's waiver of counsel's presence at the interrogation resulting in a confession could not have been voluntary, and it can be argued that the motion to suppress should have been allowed. These facts can be interpreted as resulting in a waiver coerced by circumstances engineered by the State, which is the situation addressed by the court in *Williams*.

■ No matter how deplorable the pressure brought to bear on defendant

here at various stages of the investigation of this crime, we cannot say the decision of the trial court on the motion to suppress was against the manifest weight of the evidence. Unlike *Williams*, it cannot be said with any certainty that the pressures brought to bear upon the defendant had any influence—direct or indirect—on his decision to give a confession and waive the presence of counsel at that confession. Defendant has failed to show any nexus between his mistreatment in jail and the confession which came several weeks after defendant had been removed from the more punitive deadlock area of the jail. We also note that the facts here distinguish this case from *People v. Kennedy* (1978), 60 Ill. App. 3d 947, 377 N.E.2d 830.

■■ Nor does defendant's psychiatric evidence persuade us that the confession here was other than voluntary. The only evidence for defendant on this point was the testimony of a psychiatrist regarding defendant's fitness to stand trial. At the hearing on the motion to suppress, the psychiatrist, after two meetings with defendant, was of the opinion that Aldridge was unfit to stand trial. However, after the hearing on the motion to suppress, the psychiatrist changed his opinion and pronounced defendant fit to stand trial. The question of fitness was not further pursued, and, on the record thus developed, we cannot say defendant's confession was involuntary because of a mental disability that would prevent him from understanding the meaning and consequences of the confession given.

During the confession, defendant at several points expressed a refusal to go into the details of the crime. The relevant portions of that interview are set out so the nature of defendant's statements can be properly evaluated:

"LT. PRICE: Capitol, being the street that runs—

A. [Aldridge] No, the one that runs behind the County Building on the corner there of Black's. Well, so anyway have you got enough?

\* \* \*

[Questioning continued.]

LT. PRICE: Did you take what Route 125?

A. Yes, I guess that would be it. Price I think you got enough, you got the story now.

LT. PRICE: Okay, but to clarify it, to clarify just a few things. Where was the gun?

A. It was up front.

\* \* \*

[Questioning continued.]

SHERIFF GUTSCHENRITTER: Did you have intercourse with her?

A. No.

SHERIFF GUTSCHENRITTER: Just oral sex?

A. Right. Okay now have you got enough?

LT. PRICE: Ron is there anything that—

A. No there's nothing I want to add to it.

SHERIFF GUTSCHENRITTER: Now wait a second. You said something about snow tires, you removed the snow tires from the car?

A. Right.

* * *

[Questioning continued.]

LT. PRICE: Whereabouts did she see the gun first?

A. It was in the country.

LT. PRICE: Before or after you parked?

A. Before. Look, you've got enough details right now that fits the crime so let's hang this up, huh, and you've got everything you need here now.

SHERIFF GUTSCHENRITTER: Did you know Miss Leka, had you ever seen her before?

A. No.

* * *

[Questioning continued.]

SHERIFF GUTSCHENRITTER: Anything you want to add Lester?

A. No, no, no, you've got it."

■ If, after warnings have been given, the defendant indicates that he wishes to discontinue the questioning and assert his right to remain silent, the questioning must cease. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321.) However, the demand to end the interview must be specific. (*People v. Troutman* (1977), 51 Ill. App. 3d 342, 366 N.E.2d 1088; *People v. Walker* (1971), 2 Ill. App. 3d 1026, 279 N.E.2d 23.) The comments made by defendant in the portions of the interview set out above do not show a desire for all questioning to cease but rather indicates defendant's reluctance to convey to the officers all the details of the offense.

■ Defendant also argues that the trial court should not have allowed slides of the autopsy performed on the victim into evidence. That evidence was not objected to at trial, nor was an issue concerning it raised in the post-trial motion. It is therefore waived as an issue on appeal. (*People v. Parker* (1973), 15 Ill. App. 3d 774, 305 N.E.2d 228, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 102, 95 S. Ct. 120.) While such evidence is not favored, we do not consider the introduction of those slides, under

the circumstances here, to be plain error. *People v. West* (1977), 54 Ill. App. 3d 903, 370 N.E.2d 265.

Defendant further argues that the trial court improperly allowed into evidence the testimony of a shoe salesman, testifying as an expert witness, to show defendant had the same size shoe as could have made the size of footprint near the crime scene. We find a complete lack of foundation for the qualification of the witness as an expert. (McCormick, Evidence §13 (2d ed. 1972).) However, in view of the other overwhelming evidence against defendant, including both his confession and the evidence corroborating the confession, the error, and it was error, must be seen as harmless.

Finally, defendant argues his sentence of 90 to 120 years was excessive. The crime for which defendant was convicted was a murder. Regardless of defendant's lack of any significant prior record, we cannot say the trial court abused its discretion in imposing this sentence. Absent an abuse of discretion, a reviewing court will not alter the sentencing determination of the trial court. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Affirmed.

REARDON, P. J., and WEBBER, J., concur.