FOURTH DIVISION

December 8, 2005

1-04-0074

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County. 

)

v. ) 

)

JAVIER HERNANDEZ, ) Honorable

) Thomas R. Sumner,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Defendant Javier Hernandez was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)), and sentenced to 40 years in the Illinois Department of Corrections. On appeal, defendant argues (1) the circuit court erred in admitting into evidence his videotaped statement, which he claims was improperly obtained after he had invoked his right to remain silent; (2) his trial counsel was ineffective because, even though his counsel had attempted to suppress all of defendant's inculpatory statements, he failed to seek to suppress defendant's videotaped statement on the basis that it was procured after defendant had invoked his right to silence; (3) the evidence was insufficient to prove that he was responsible for first degree murder under a "common design" theory of accountability; and (4) he did not knowingly and intelligently waive his right to a jury trial.  For the following reasons, we reverse and remand this cause for a new trial.

BACKGROUND

On June 25, 2000, Roy George and Abel Reyes were attacked by a group of Satan Disciples gang members.  George was killed after one of those gang members broke a piece of asphalt over his head.  After being arrested, defendant agreed to give a videotaped statement discussing his involvement in George's death to Assistant State's Attorney Victoria Ciszek (ASA Ciszek).  According to the verbatim transcript of defendant's videotaped statement (the actual videotape was not included in the record before this Court), after ASA Ciszek had informed defendant who she was and defendant had confirmed that he had been read his 
Miranda
 rights, the following colloquy occurred between ASA Ciszek and defendant:

"Q.  Havier [sic] Hernandez, I talked to you earlier and you told me about the murder of Roy George.  At that time you told me that you and other members of the Satan Disciples decided to beat up Roy George.  You picked up a large brick and chased Roy George into an alley with other Satan Disciples.  The other Satan Disciples punched and kicked him.  Roy George fell to the ground and while he was on the ground you threw the brick at him which hit him in the head.  I'm going to read you your rights again.  Do you understand that you have the right to remain silent?

A.  Yes.

Q.  Could you please keep your voice up?

A.  Yes.

Q.  Do you understand you have the right to talk to a lawyer and have him present with you while you are being questioned?

A.  Yes.

Q.  Do you understand if you cannot afford to hire a lawyer and you want one, a lawyer will be appointed by the court to represent you before any questioning?

A.  Yes.

Q.  Do you understand that although you are a juvenile, you will be tried as an adult?  Do you understand that?

A.  Yes.

Q.  Understanding these rights, do you wish to talk to us now?

A.  No, not no more.

Q.  Do you wish to talk to us now about what we previously spoken to?

A.  Yes." 

Defendant then went on the discuss his role in George's murder.

Prior to trial, defense counsel filed motions to quash defendant's arrest and suppress any statements he made to the police or prosecutors.  In the motion to suppress defendant's statements, defense counsel sought to bar "any and all oral or written communications, confessions, statements or admissions whether inculpatory or exculpatory made by [defendant] prior to, at the time of, or subsequent to his arrest in the above entitled cause," and listed several bases for the suppression of those statements.  That defendant had invoked his right to silence during his videotaped statement was not one of them.

During the hearing on defendant's motions to quash and suppress statements, several witnesses testified for both defendant and the State.  During the hearing on defendant's motion to quash his arrest, Detective Gregory Swiderek testified that Enrique Zamora, a Satan Disciple who later pleaded guilty for his role in attacking George and Reyes, told him that defendant "said that on the night of the beating, murder, that the Folks, meaning the Satan Disciples, were punching and kicking some guy.  And when he was held down, he hit him in the head with a brick and saw his brains in the alley."  Detective Swiderek also testified that defendant admitted to "striking Roy George with a brick." 

Witnesses of note during the hearing on defendant's motion to suppress statements were Officer Cortez, who testified that he was in the interview room with defendant and ASA Ciszek while they were "basically going over what they were gonna to [sic] do on the videotape" before that statement was made and served as a translator for defendant's mother during defendant's videotaped statement; Detective Gregory Swiderek, who testified that he spoke with defendant regarding his role in George's death and that he placed defendant under arrest "after [defendant] gave [him] a statement incriminating himself and his involvement in the murder"; ASA Ciszek, who testified that she spoke with defendant about the "incident that occurred on June 25
" for about 45 minutes, that after that conversation, defendant agreed to make a videotaped statement, which contained "basically the same information," and that Detective Swiderek had told her that defendant had already "implicated himself in the murder"; and defendant, who testified that he spoke to Detective Swiderek and "told him about what had occurred relative to Roy George and all the other fellows that were out on the street that day."  After each hearing, the circuit court denied defendant's motions.

At trial, the following individuals testified on behalf of the State: Josephine Garcia (the victim's mother), Reyes (George's friend who was also attacked by the Satan Disciples on the night of George's murder), and ASA Ciszek.  Ms. Garcia testified that on June 25, 2000, she found her battered son lying in the alley near 21st and Leavitt and that he died later that night.  

Reyes testified that a group of Satan Disciples attacked him and George for smoking PCP in a park located in the gang's territory.  Reyes did not see what happened to George, nor was he able to identify defendant as one of his attackers.

ASA Ciszek testified that she spoke with defendant about his role in George's murder for 45 minutes and that, after their conversation, defendant chose to make a videotaped statement.  She did not testify to what was said during that 45 minute "pre-videotaped statement" conversation.  Defendant's videotaped statement was played in open court during her testimony.

In that statement, defendant stated that on June 25, 2000, at approximately 10 p.m., he was cruising around with his friends Miguel and Philly, both fellow members of the Satan Disciples, when Philly's phone rang.  Philly told the caller "I'll be there" and informed defendant that other Satan Disciples were "beating up some guys" who had violated gang rules near the Ruiz school at 24th
 and Leavitt.  As they were driving to the scene, they picked up three other unnamed fellow gang members because Philly said "he needed some guys."  When they arrived at 24th and Leavitt, defendant saw a group of about five gang members beating up "a guy [who he later learned was Reyes] right there on the corner of Ruiz."  Defendant and a few other gang members then chased a second teenager, who he later learned was George, into the alley.  As he ran into the alley, defendant picked up a brick from "the middle of the street on 21st
 and Leavitt where they were doing some construction."  

When he got into the alley, he saw a number of gang members "beating [George] down" by punching and kicking him.  When they "had him already almost by the floor," defendant "went straight at him" and threw the brick at his head.  Though George tried to block the brick, it struck him in the head.  Another gang member then picked up the brick and, again, hit George in the head, breaking the brick into two pieces.  Defendant then ran to a friend's house and stayed there for three or four days.  Defendant also admitted to telling Zamora a few days after the incident that he had hit George with the brick.          

The parties then entered into several stipulations, including one as to the testimony of the medical examiner, Barry Lifschultz, who would have testified that George "died as a result of cranial cerebral injury due to blunt trauma" and that "[t]hese injuries are consistent with being struck in the head at least two times."  The parties also stipulated to the testimony given during defendant's pretrial motions to quash his arrest and suppress his statements.  Defendant presented no evidence.

After closing arguments, the circuit court found defendant guilty of first degree murder, noting that, in addition to the testimony of the witnesses, defendant's statement was "quite instructive as to in terms of the resolution of the case."  D
efendant's current counsel on appeal, who stepped in after trial but before sentencing, filed a motion for a new trial alleging that defendant had not been proven guilty beyond a reasonable doubt, the circuit court "erred in denying the defendant's pretrial motion to suppress evidence," and the circuit court "erred in denying the defendant's pretrial motion to suppress statements."
  

Though defense (now appellate) counsel alleged in the motion that the circuit court had erred in not suppressing defendant's statements, he too failed to rely on defendant's invocation of his right to remain silent as a basis for suppressing defendant's videotaped confession, instead dedicating his memorandum in support of the motion for a new trial to his "(in)sufficiency of the evidence" argument.  The circuit court denied defendant's motion for a new trial and sentenced him to 40 years in the Illinois Department of Corrections.  Defendant filed a timely notice of appeal.

ANALYSIS

I.  Right to Silence

Defendant's first two arguments on appeal revolve around his contention that he invoked his right to silence during his videotaped statement.  He maintains that the circuit court erred in not suppressing the videotape on that basis, even though neither defense counsel at trial or after trial argued for suppression on that basis, and that his initial trial counsel was ineffective for failing to do so.

The State argues that defendant's invocation was ambiguous and indicated only a "reluctance to discuss any additional details of the offense."  The State maintains that ASA Ciszek properly asked defendant a clarifying question as to whether he was invoking his right to silence, and when he indicated that he was not doing so, she continued the questioning.  The State further argues that the circuit court could not have erred in failing to suppress the videotaped statement based upon defendant's invocation of his right to silence because that argument was never presented as a basis for suppression and defendant's trial counsel was not ineffective for failing to raise that basis.  Of course, all of this is for naught if defendant did not actually invoke his right to silence.

To protect an individual's right not to be a witness against himself, found in both the United States and Illinois Constitutions (see U.S. Const. amend. V; Ill. Cont. 1970 art. I, § 10), interrogation must cease once the individual indicates in any manner and at any time prior to or during a custodial interrogation that he wishes to remain silent (see 
People v. Edwards
, 301 Ill. App. 3d 966, 977 (1998), citing 
Miranda v. Arizona
, 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 
86 S. Ct. 1602, 1627-28 (1966)).  "[A]ny statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."  
Miranda
, 384 U.S. at 474, 16 L. Ed. 2d at 723, 
86 S. Ct. at 1628.

This right to silence may be invoked either verbally or through conduct that clearly indicates a desire to end all questioning (see, 
e.g.,
 
People v. Nielson
, 187 Ill. 2d 271, 287, (1999) (finding the defendant had invoked his right to remain silent when he placed his hands over his ears, turned his head, and chanted "nah nah nah").  If verbal, the individual's demand to end the interrogation must be specific.  See 
People v. Pierce
, 223 Ill. App. 3d 423, 429 (1991).  After reviewing the verbatim transcript of defendant's videotaped statement, we find that defendant specifically invoked his right to silence.  

Upon being informed of his rights, including his right to silence, defendant was asked whether, "[u]nderstanding these rights, [he] wish[ed] to talk to [them] now."  Defendant responded, "No, not no more."  Though it is possible that defendant was being facetious, without the videotape it is impossible to tell.  
From the verbatim transcript alone, it appears that while defendant had been willing to talk to the police and prosecutor about his role in George's murder, making several incriminating statements prior to his videotaped statement, 
i.e.
, to Detective Swiderek after his arrest and to ASA Ciszek just before the videotaping began, he decided during the videotaping that he no longer wished to speak.  
See 
Edwards
, 301 Ill. App. 3d at 977 (stating that a defendant has the right to cut off questioning at any time prior to or during a custodial interrogation by informing his interrogator that he wishes to remain silent, and once he so indicates, the interrogation must cease).

Despite the State's arguments to the contrary, the language defendant used here to invoke his right to silence was clear and unequivocal, unlike language from other cases found to be too ambiguous to sufficiently do so.  See 
People v. Milner
, 123 Ill. App. 3d 656, 658 (1984) (holding the defendant did not trigger his right to silence when he said " 'I'm tired, I can't answer no more' ");
 
People v. Aldridge
, 68 Ill. App. 3d 181, 186-87 (1979) (finding the defendant did not properly invoke his right to silence when he told police " 'I think you got enough,' " " 'Okay now have you got enough,' " " 'there's nothing I want to add to it,' " and " 'you've got everything you need here now' "); 
People v. Troutman
, 51 Ill. App. 3d 342, 344 (1977) (finding the defendant's comment that she was not going to make a confession was not "specific enough to constitute a demand that questioning cease"); see also 
Edwards
, 301 Ill. App. 3d at 978-79; 
People v. Pierce
, 223 Ill. App. 3d 423, 430-31 (1991) (no proper invocation when the defendant stated, " 'If I don't want to answer any more questions, then what happens,' " " 'You got all the stuff there right now.  You don't need no more really,' " and " 'I told you, though, once that ...' "); 
People v. Downey
, 162 Ill. App. 3d 322, 337 (1987).  Here, when asked whether he wanted to talk, defendant said "No, not no more."  This is a clear and unequivocal invocation of the right to remain silent.  

Having found that defendant properly invoked his right to silence, we must next determine whether the trial court could properly consider defendant's statements that followed that invocation.  Statements made after the invocation of the right to silence are admissible only if the interrogators scrupulously honored the defendant's right to cut off questioning.  See 
Edwards
, 301 Ill. App. 3d at 977; see also 
Michigan v. Mosley
, 423 U.S. 96, 46 L. Ed. 2d 313, 321, 
103-04, 96 S. Ct. 321, 326 (1975) (holding that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under 
Miranda
 on whether his 'right to cut off questioning' was 'scrupulously honored'").  In deciding whether that right was so honored, courts should consider whether (1) the interrogator immediately halted the initial interrogation after the defendant invoked his right to remain silent; (2) a significant amount of time elapsed between the interrogations; (3) the defendant was "re-
Mirand
ized" before the second interrogation; and (4) the second interrogation addressed a crime different from that of the first interrogation (though the fact that the same crime was discussed during both interrogations does not preclude a finding that the defendant's right to silence was scrupulously honored).  See 
Nielson
, 187 Ill. 2d at 287.

None of the above occurred in this case.  After defendant invoked his right to silence, ASA Ciszek asked a clarifying question and then continued to ask him about his involvement in George's murder.  No meaningful time elapsed between defendant's invocation and the resumption of the interrogation, he was not "re-
Mirand
ized," and the questioning after the invocation concerned the same crime.  Thus, we find that defendant's right to silence was not "scrupulously honored" and, as such, his postinvocation statements were not admissible.

In the instant case, defendant failed to raise his invocation of his right to silence in his motion to suppress his statements, object at trial to the admission of his videotaped statement, or specifically include this issue in his posttrial motion for a new trial.  On appeal, defendant argues that his trial counsel was ineffective for failing to raise this issue as a basis for suppressing his videotaped statement.  

Ineffective assistance of counsel occurs when a trial counsel's representation falls below an objective standard of reasonableness and counsel's error(s) prejudiced the defendant in that but for counsel's shortcomings, the outcome of the proceeding would have been different.  See 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Albanese
, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984).  The fundamental concern underlying this test is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  
Strickland
, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.  The defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence.  
People v. Coleman
, 183 Ill. 2d 366, 701 N.E.2d 1063 (1998).  The prejudice prong of the 
Strickland
 test requires "a reasonable probability of a different result, not merely a possibility."  
People v. Gacy
, 125 Ill. 2d 117, 130 (1988).

The decision of whether a motion to quash arrest and suppress evidence should be filed in a criminal case is a matter of trial strategy, and counsel benefits from a strong presumption that failure to challenge the validity of defendant's arrest or to move to exclude evidence was proper.  
People v. Little
, 322 Ill. App. 3d 607, 750 N.E.2d 745 (2001); 
People v. Peterson
, 248 Ill. App. 3d 28, 618 N.E.2d 388 (1993).  To prevail on a claim that trial counsel was ineffective for failing to file a motion to quash or suppress (or, more to the point, for failing to put forth what in hindsight was a winning argument in that motion), a defendant must show a reasonable probability that the motion would have been granted and that the trial outcome would have been different.  See 
Peterson
, 248 Ill. App. 3d at 38. "[R]easonable probability" is defined as a probability sufficient to undermine confidence in the outcome.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Though defense counsel did seek to suppress defendant's statements, there is no question that defendant's videotaped statement (or, at least, a major portion of that statement) would have been suppressed had defense counsel raised the argument that defendant had invoked his right to silence; nor does there appear to be any valid trial strategy in defense counsel's failure to do so here.  In his postinvocation videotaped statements, defendant not only admitted to being part of the group that attacked and murdered George, he detailed the role he played in that murder, 
i.e.
, picking up the brick and hitting George in the head with it.  

The State maintains that there was other evidence implicating defendant in George's murder, 
i.e.
, testimony from Detective Swiderek and ASA Ciszek as to their conversations with defendant where he made incriminating statements.  We note that there was no eyewitness testimony or physical evidence linking defendant to George's murder.  The State's case against defendant was largely based on his videotaped statement.  The circuit court specifically noted that defendant's statement was "instructive" in his finding defendant guilty of first degree murder.    

The State also argues that before defendant invoked his right to silence, he "confirmed" the basic facts of the murder to ASA Ciszek before invoking his right to silence:

"Q.  Havier [sic] Hernandez, I talked to you earlier and you told me about the murder of Roy George.  At that time you told me that you and other members of the Satan Disciples decided to beat up Roy George.  You picked up a large brick and chased Roy George into an alley with other Satan Disciples.  The other Satan Disciples punched and kicked him.  Roy George fell to the ground and while he was on the ground you threw the brick at him which hit him in the head.  I'm going to read you your rights again.  Do you understand that you have the right to remain silent?

A.  Yes.

First, the "Yes" arguably referred only to whether defendant understood that he had a right to remain silent, and not whether he was confirming ASA Ciszek's summary of their earlier conversation.  Second, during trial, the State merely presented cursory details of defendant's oral statements made prior to defendant invoking his right to silence.  Taking into account the importance of defendant's detailed videotaped statement to the State's case, and the circuit court's acknowledgment of that importance, there is a reasonable probability that the outcome of defendant's trial would have been different had his postinvocation videotaped statements been suppressed.  Thus, defense counsel was ineffective for not raising the argument that defendant had invoked his right to silence, and defendant was prejudiced by his failure to do so.

II.  Sufficiency of the Evidence

The next question is whether remand for a new trial is barred by the double jeopardy clause.  The double jeopardy clause forbids a second, or successive, trial for the purpose of affording the prosecution another opportunity to supply evidence it failed to muster in the first proceeding.  
People v. Olivera
, 164 Ill. 2d 382, 393 (1995).  Although the double jeopardy clause bars the State from retrying a defendant after a reviewing court has determined that the evidence at trial was legally insufficient to convict, that clause does not preclude retrial of a defendant whose conviction has been set aside due to an error in the proceedings leading to the conviction.  
People v. Mink
, 141 Ill. 2d 163, 173-74 (1990).  For purposes of double jeopardy, all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence; it is not necessary that the erroneously admitted evidence be discounted in determining whether retrial is permitted.  See 
Olivera
, 164 Ill. 2d at 393, citing 
Lockhart v. Nelson
, 488 U.S. 33, 40, 102 L. Ed. 2d 265, 273, 
109 S. Ct. 285, 290 (1988).

In reviewing a defendant's insufficiency of the evidence claim, the relevant inquiry is whether, after viewing the evidence and any inferences therefrom in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See 
People v. Smith
, 185 Ill. 2d 532, 541 (1999).  A criminal conviction will not be set aside on review unless the evidence is so unsatisfactory or improbable that there remains a reasonable doubt of the defendant's guilt.  
People v. Byron
, 164 Ill. 2d 279, 299 (1995). 

In this case, the State maintained that defendant was accountable for George's murder.  To prove an offense by accountability, the State must prove that, either before or during the commission of an offense, the defendant solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of the offense.  720 ILCS 5/5-2(c) (West 2002).  Under the "common design" theory of accountability, where two or more persons engage in a common criminal design or agreement, any further acts committed by one party are considered to be the acts of all parties to the common design and all are equally accountable for the consequences of such further acts.  
People v. Johns
, 345 Ill. App. 3d 237, 242 (2003).  A common design may be inferred from the circumstances surrounding the commission of a crime.  
People v. Lee
, 247 Ill. App. 3d 505 (1993).

Taking into account defendant's videotaped statement, evidence of guilt was overwhelming.  In fact, defendant's role in George's murder is a textbook example of legal accountability, for not only did he stand and watch as fellow gang members attacked George (see 
Johns
, 345 Ill. App. 3d at 241-24 (noting that proof that the defendant was present during the commission of a crime without opposing or disapproving it, that he maintained a close affiliation with the principal afterwards, and that he failed to report the crime are all factors that may be considered in determining legal accountability)), he both supplied the murder weapon and introduced it into the fray.  It was defendant who grabbed the brick from the street and waited until his fellow gang members had knocked George to the ground before throwing it at George's head.  Even if defendant's blow was not the fatal one, a rational trier of fact could certainly conclude that he facilitated George's murder.

Because we find that defendant received ineffective assistance of counsel and that there was sufficient evidence presented at defendant's trial to allow for a new trial on remand, we do not address whether defendant knowingly and intelligently waived his right to a jury trial.

Reversed and remanded for a new trial.

GREIMAN and MURPHY, JJ., concur.