SECOND DIVISION
February 6, 2007

No. 1-05-0219

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CARRANZ JONES, | ) | Honorable |
| | ) | Clayton J. Crane, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Following a bench trial, defendant Carranz Jones was convicted of first degree murder and sentenced to 37 years in prison.

On appeal, Jones contends: (1) his counsel was ineffective for failing to file a motion to suppress a videotaped confession in which defendant invoked his right to remain silent; (2) he proved second-degree murder by a preponderance of the evidence; and (3) his mittimus should be corrected to reflect 1,648 days of credit for time spent in custody. We affirm defendant's conviction and sentence and order the mittimus corrected.

FACTS

At trial, the evidence showed that on June 2, 2000, the defendant killed his girlfriend Diane Vance by beating her with a hammer.

Vance was found in the reclined front passenger seat of her car in an alley. There were burn holes in her pants on the right knee and a spent match on her leg. The left front pants pocket was turned inside out. The autopsy report listed 46 lacerations to her head and neck. The lacerations penetrated her skull, spine, larynx, esophagus, and a carotid artery. Some of the lacerations were consistent with being caused by the claw of the hammer, some with the front of the hammer. Both sides of Vance's jaw were broken, and her skull was fractured. The medical examiner testified this would have required severe force. He said Vance's injuries were consistent with being reclined in the passenger seat with the assailant on the left striking her. She suffered brain hemorrhaging and significant blood loss. She did not die immediately. Her right knee had postmortem burns. Vance was pregnant; the fetus was approximately 24 weeks old.

Vance lived in a house with her aunt, cousin, and brother. She and the defendant had a two-year-old son. Vance's aunt testified the defendant slept at the house with Vance every night.

Chicago police detective Robert Lenihan testified the police found a pair of dark blue jeans at the house. They found money in the pocket of the jeans. The bills had blood droplets on them. Vance's brother, Lonnie Vance, told police the jeans

belonged to the defendant.  The parties stipulated Vance's DNA profile matched that of the blood found on three of the bills.  One of the latent fingerprints recovered from the hood of Vance's car matched defendant's fingerprint.

Joanna Leafblad, an assistant state's attorney, interviewed the defendant.  Leafblad took a videotaped statement of the defendant.  Prior to the videotaped statement, Leafblad said, she introduced herself to the defendant and advised him of his Miranda rights.  Detective Lenihan was present for the statement.  The video was played at the trial.

A transcript of the videotape is not in the record.  We have reviewed the videotape.  On the tape, the defendant agreed he had been advised of his rights earlier.  Leafblad summarized what the defendant had told her--that he was driving to work, Vance started arguing with him, he backhanded her a few times, he picked up a hammer and hit her with it a few times, he heard her moaning, left her in the car in an alley, threw the keys, and took the bus home.  Defendant agreed that is what he told her.  Leafblad read defendant his rights again.  He said he understood.

Defendant then said, "I can't do this, man."  When asked what he was referring to, defendant said, "this statement stuff, man."  Leafblad asked defendant if he wished to remain silent; he said yes.  Leafblad asked defendant if they had spoken earlier

3

and if her summary of what he told her was what they talked about. Defendant said yes. Without prompting, defendant then said, "Go ahead." Leafblad asked if he was saying he wished to proceed with the videotaped statement. Defendant said, "Yeah. Go ahead." Leafblad again advised defendant of his rights.

Leafblad then asked defendant a series of questions about the incident. The defendant said he was driving Vance to the train so she could go to work. Vance was nagging him, not yelling, but speaking in a regular voice. The two started arguing. Vance poked the defendant in his shoulder. She grabbed the wheel while he was driving. Defendant pulled the car over, and the two continued arguing. Vance spit at the side of his face and hit him in the shoulder with her fist. Defendant told Vance to calm down. He hit her in the face twice. Vance was hitting him. The defendant demonstrated how he reached out his arm to hold her back. After he resumed driving, defendant pulled the car over a second time.

The two were grabbing at each other. Defendant took a hammer from the back seat of the car and hit her four or five times to "get her back" and "to get her to stop" hitting him. Vance moved to the side and "got kind of quiet." She said she wasn't feeling good and began moaning. The defendant pulled into an alley. He took the keys out of the ignition and threw them to

4

the side of the alley. He took cash out of Vance's pocket. He got on a bus and went home. He went to bed.

On cross-examination, Leafblad testified she reviewed the paperwork that had been prepared by police prior to interviewing the defendant. She did not recall whether there were contradictions between what defendant told police and what he told her.

The defense presented no witnesses. At the end of the trial, the court convicted the defendant of first degree murder.[1] Defendant was sentenced to 37 years in prison.

DECISION

I. Ineffective Assistance

The defendant contends he received ineffective assistance because his counsel failed to file a motion to suppress the videotaped statement. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The defendant must show counsel's performance fell below an objective standard of reasonableness, and the deficient performance prejudiced the defendant. Strickland, 466

---

[1]The court convicted the defendant of two counts of intentional homicide of an unborn child but later reversed its findings on those counts.

1-05-0219

U.S. at 687-88, 80 L.E.2d at 693, 104 S. Ct. at 2064. To show prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 80 L.E.2d at 698, 104 S. Ct. at 2068. The failure to establish either prong of the Strickland test is fatal to a defendant's claim. People v. Ceja, 204 Ill. 2d 332, 358, 789 N.E.2d 1228 (2003).

When alleging ineffective assistance of counsel, a defendant must overcome the presumption that the attorney's conduct will be considered a matter of trial strategy. People v. Woodard, 367 Ill. App. 3d 304, 312, 854 N.E.2d 674 (2006). The decision to file a motion to suppress generally is considered a matter of trial strategy, which is entitled to great deference. People v. White, 221 Ill. 2d 1, 20, 849 N.E.2d 406 (2006). In order to show the decision amounted to ineffective assistance, the defendant must show the outcome of the trial would have been different had the evidence been suppressed. Woodard, 367 Ill. App. 3d at 312.

Relying on People v. Hernandez, 362 Ill. App. 3d 779, 840 N.E.2d 1254 (2005), defendant contends his videotaped statement was inadmissible because the assistant state's attorney failed to honor his invocation of his right to remain silent and continued

6

to question him after the invocation.  In <u>Hernandez</u>, the transcript of the defendant's videotaped statement showed that after the assistant state's attorney summarized the defendant's confession and advised him of his rights, she asked the defendant whether he wished to talk.  The defendant responded, "no, not no more."  He again was asked whether he wished to talk, and he answered yes.  <u>Hernandez</u>, 362 Ill. App. 3d at 781-82.  Defendant then gave a statement confessing to the crime.  Defendant's counsel filed a motion to suppress his statement but did not base the motion on  his invocation of his right to remain silent.

The court found defendant clearly and unequivocally invoked his right to remain silent.  <u>Hernandez</u>, 362 Ill. App. 3d at 785-86.  Statements made after the defendant properly invokes his right to silence are admissible only if the prosecutors scrupulously honor the defendant's right to cut off questioning. <u>Hernandez</u>, 362 Ill. App. 3d at 786.

The court held defense counsel was ineffective for not raising the argument that defendant had invoked his right to silence, and held defendant was prejudiced by his failure to do so.  <u>Hernandez</u>, 362 Ill. App. 3d at 788-89.  The court found the videotaped statement would have been suppressed had defense counsel raised the argument.  Nor did there appear to be "<u>any valid trial strategy</u>" in counsel's failure to do so.  (Emphasis

1-05-0219

added.)  <u>Hernandez</u>, 362 Ill. App. 3d at 788.

We agree defendant invoked his right to silence during the interrogation.  However, we are not reviewing the denial of a motion to suppress.  The issue is whether defense counsel was ineffective for failing to file the motion.  In contrast to <u>Hernandez</u>, defense counsel in this case had a valid strategic reason to allow the State to introduce the videotaped statement. Defendant's theory at trial was based on the mutual combat category of provocation to support a conviction for second degree murder.  It likely was his only defense.  According to the tape, defendant's initial statement did not include any details about his argument with Vance.  Nothing about her hitting, poking, or punching him, spitting at him, or grabbing the steering wheel. But it did contain an admission that he struck Vance a few times, heard her moaning, and left her in the car in an alley.

Defense counsel's closing argument focused on all the details contained in defendant's videotaped confession.  Absent the introduction of the videotape, counsel would have had virtually no evidence to argue defendant was engaged in mutual combat with Vance.

Defendant has not overcome the strong presumption that his counsel's failure to file a motion to suppress was the result of trial strategy.  Because we find defendant does not meet the

8

first <u>Strickland</u> prong, <u>i.e.</u>, that defendant's performance was deficient, we need not analyze the prejudice prong. Even if we were to reach the prejudice prong, we find it unlikely the outcome of the trial would have been different where defendant clearly confessed to hitting Vance with a hammer before he memorialized the statement on the videotape, and where the victim's blood was found on money in the defendant's pocket. Defendant has failed to carry his burden to show his counsel provided ineffective assistance.

## II. Second Degree Murder

Defendant contends his conviction should be reduced to second degree murder because he proved by a preponderance of the evidence his actions were based on a sudden and intense passion resulting from serious provocation. As evidence, he cites his statements on the videotape that in the course of the argument, Vance hit, pushed, and poked him, grabbed the steering wheel while he was driving, spit on him, and wrestled with him.

A person commits second degree murder when he or she intentionally causes the death of another and the person is acting either under a sudden and intense passion resulting from serious provocation by the victim, or under an unreasonable belief that the circumstances surrounding the killing would justify or exonerate its commission. 720 ILCS 5/9-2(a)(1),

1-05-0219

(a)(2) (West 2004). "Serious provocation" is defined as "conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9-2(b) (West 2004).

A defendant on trial for first degree murder must prove one of the mitigating factors by a preponderance of the evidence to be found guilty of the lesser offense. 720 ILCS 5/9-2(c) (West 2004). Illinois courts recognize four categories of provocation sufficient to warrant a second-degree murder instruction--mutual quarrel or combat, substantial physical injury or assault, illegal arrest, or adultery with one's spouse. People v. Eason, 326 Ill. App. 3d 197, 207, 760 N.E.2d 519 (2001).

Mutual combat is defined as "a fight or struggle entered into by both parties willingly or a mutual fight upon a sudden quarrel and in hot blood upon equal terms where death results from the combat." People v. Rivera, 255 Ill. App. 3d 1015, 1026, 627 N.E.2d 294 (1993). The evidence must show the confrontation was mutual, and both parties participated in the fight. People v. Jackson, 304 Ill. App. 3d 883, 893, 711 N.E.2d 360 (1999). Mutual combat does not apply where the defendant's retaliation was out of all proportion to the provocation, especially where the defendant used a deadly weapon to commit the homicide. Rivera, 255 Ill. App. 3d at 1026.

Where a defendant argues he presented sufficient evidence to

10

prove one of the mitigating factors, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the mitigating factors were not present.  People v. Blackwell, 171 Ill. 2d 338, 357-58, 665 N.E.2d 782 (1996).

We reject defendant's contention that there was evidence of mutual combat sufficient to reduce his conviction to second degree murder.  The defendant responded to Vance's hitting, poking, and spitting at him by beating Vance with a hammer multiple times, using the flat and claw ends of the hammer to fracture her jaw and skull and lacerate her neck.  Defendant's actions were grossly disproportionate to any provocation by Vance.

Where a defendant attacks a victim on slight provocation with disproportionate violence, the mutual combat aspect of provocation does not apply as a matter of law.  People v. Ford, 163 Ill. App. 3d 497, 503, 516 N.E.2d 766 (1987).  See also People v. Austin, 133 Ill. 2d 118, 125, 549 N.E.2d 331 (1989) (defendant shot and killed unarmed victim who provoked defendant by speaking gruffly to her and striking her on the hand with a bus transfer punch); People v. Sutton, 353 Ill. App. 3d 487, 496, 818 N.E.2d 793 (2004) (defendant responded to allegedly being hit by the victim with a roller skate by stabbing the victim 23

11

1-05-0219

times); People v. Lockhart, 201 Ill. App. 3d 700, 714, 558 N.E.2d 1345 (1990) (defendant responded to victim's grabbing defendant and choking him by chasing and shooting victim).

III. Mittimus

Defendant contends his mittimus must be corrected to reflect the number of days of credit for time spent in custody.  He says he should have received 1,648 days of credit, 29 more days than the 1,619 days granted by the trial court.  The State concedes defendant is entitled to 29 additional days of credit.  Pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615), a reviewing court on appeal may correct the mittimus at any time, without remanding the cause to the trial court.  People v. Whitfield, 366 Ill. App. 3d 448, 451, 851 N.E.2d 730 (2006).  Accordingly, we order the correction of that portion of the mittimus to reflect 1,648 days of credit.

CONCLUSION

We affirm the defendant's conviction and sentence and order the mittimus corrected.

Affirmed and mittimus corrected.

Wolfson, P.J., with Hoffman, and South, JJ., concurring.